Second case on the argument list for this morning, I'd like to note that three cases were submitted as of today on the Briefs Without Oral Argument, namely Appeal No. 05-3102, Rawls v. United States Postal Service, Appeal No. 05-3159, Santana v. Department of Homeland 3, Page v. Merit System Protection Board. The next case on the argument list is Appeal No. 05-5149, McLean v. United States. Mr. Silver, good morning. Welcome, and please proceed. Good morning, Your Honor. May it please the Court, my name is Daniel Silverman. I represent Appellant Norbert McLean, who is in court with me today. I respectfully reserve five time for rebuttal. There are two fundamental questions before this Court, which, with all due respect, we believe the Court of Federal Claims erred in its findings. Could you tell me exactly what sentence by Judge Williams misstates the law? What sentence, in her opinion, is wrong? Well, basically, I don't have a specific sentence in mind. It basically has to do with the fact opinion over and over. It seemed to me that it's an exceedingly careful, thorough opinion, very precise, and I could not find fault with a single sentence or clause anywhere in the whole opinion. If she got the law wrong in such an explicit, thorough opinion, you would expect there would have to be some text that would embody a misstatement of the law. If you can't point out where she misstated the law, I'm going to have a very hard time accepting your argument that she did misstate the law, misunderstand the law, misinterpret the law, and therefore misapply the law. Well, specifically, Your Honor, where the Court erred was her reliance on the Martinez Court, the Martinez decision, which was an administrative discharge case not involving a court-martial and did not involve a punitive discharge. In that decision, which she relied upon, the Court said that you don't have to exhaust all available administrative and all only permissive remedies. The distinction, the critical distinction. You don't have to exhaust anything. Well, you do. The point is, under the Supreme Court holdings in Noyd and Gussik and Schlesinger and this Court's holdings in Cooper and Williams, you are required to exhaust all available military judicial remedies when you're involving a court-martial and when you're involving a punitive discharge. The Martinez Court, which the government had a trial on. The issue here is a time bar, right? And so the question is, when does the six-year clock start to run? Our case law says, I think with great clarity and consistency and total lack of any flex, that the date of the wrongful discharge is the date that the clock starts to run. That is the decision of the Martinez Court. You're right. That's what it said. But the point is, the Martinez Court does not apply and the statute of limitations does not begin to run at the time of discharge when you have a situation involving a punitive discharge in a court-martial case. Why would it make any difference what the cause of the wrongful discharge was as to when the statute starts to run because the claim is accrued, because the wrongfulness has occurred? Because under the Uniform Code of Military Justice, Your Honor, in an administrative discharge case, it does not require exhaustion of all military judicial remedies. That's a matter of military criminal justice. That has nothing to do with the statute of limitations that applies to the Tucker Act in back pay military cases. But the only authority that talks about the statute of limitations accruing at the time of the discharge are cases involving administrative discharges and not involving court-martials. What's the difference? This is what I don't understand and what Judge Michel obviously is troubled by. Why should it make ... Sure, you can distinguish Martinez and say, well, that involved ... It was an administrative judge in Article 15 proceeding, but that involved an administrative judge and this involves an order of a court-martial saying you ought to be discharged. But what is the difference in terms of when the claim accrued? In each case, what he did was that once the proceedings were over and he was discharged, the time did not keep told, was not told, during the time that he was invoking the board's ... The correction board. What we have in this case is he went to the first court of military appeals and lost and didn't seek review in the next level of the court. Now the question is, once that happened and the military system appeals were exhausted, they discharged him. Then what the court of claims said, as I read it, is your claim accrued once you had gone through all of those military proceedings and you were discharged and you've waited more than six years from your discharge to bring suit in this court and it's untimely. What is the flaw in that? The problem is that Mr. McLean is put between a rock and a hard place. He's required to exhaust all available military remedies. In fact, the Williams Court specifically said that unless you do that, because there's substantial deference to the military courts, they don't want people enroting the military system, it requires you to go through and exhaust all remedies. But the time that it takes to do that ... There's no end to it, is there? I mean, there's nothing to prevent ... I assume that, I don't know, today or tomorrow, he could file a new case in the court of military appeals seeking, I don't know, maybe there's some other writ. I don't know all of these old common law writs that you can dream up, but it seems to me at some point there has to be an end to these proceedings. Well, Your Honor, the issue of the exhaustion doctrine and the equitable tolling doctrine in this case sort of fit hand in glove. Sometimes they're separate. But here, not only is there an issue with exhaustion, and Mr. McLean could not go to the civilian courts until he exhausted the military remedies, which took longer than the six-year statute, but we have an issue of fairness here, an issue of equitable tolling, because the evidence, the critical evidence Mr. McLean needed, appellant needed, to support his constitutional claim of a fatal jurisdictional defect was concealed by the government for nearly a decade. Not so fast. You've made several statements here. First of all, you spoke of a jurisdictional defect. There's a fatal jurisdictional defect in the convening of the court-martial. What was the jurisdictional defect in the court-martial? It wasn't ... He was admittedly a member of the armed forces, wasn't he? What is the jurisdictional defect? That the court-martial was improperly convened because his commanding officer, Commander Cosgriff, he and Mr. McLean had filed a complaint, an Article 138 complaint against his commanding officer. I've looked in the record. I didn't see it. Maybe it's in there somewhere. You would know. Is the ruling on his 138 complaint in the record? Yes. Well, the piece of paper itself, that document was finally produced in 2002. What did it say? Did it say anything about the commander was biased against him? It said that his complaint had merit. It was a meritorious complaint. So? It had merit. But how does that in any way affect the court-martial jurisdiction? I don't understand that argument. Because under the Nix decision, the Nix 2 decision, the referring officer, you have a right to be free from bias and a right to be free from prejudice. And the commanding officer, Commander Cosgriff, the complaint against him was found to be meritorious. He was the one that then referred, a few months later, the court-martial charges. And Mr. McLean has a due process right to be free from prejudice and to be free from bias. What evidence do you have of prejudice of bias, apart from the fact that he forwarded it? And by the way, you say in your brief, as I read your brief, you state that the investigating officer said there was absolutely no merit to any of these charges. As I read it, what the investigating officer said was, she said, there's no merit to most of these charges, but the charges of the bank, the checks, giving bad checks, did have merit. That's not my understanding of the record. My understanding is that the court below found that there was little or no evidence to support the charges and that the 138 complaint was found to be meritorious. Now what is the evidence you have? You just told us a little while ago that the government had concealed the results of this 138. What evidence do you have of that? Well, the issue of the concealment was that Mr. McLean was at a specific command post. Is your evidence of concealment the only thing that he didn't know about it? Well, it's two things under concealment. One is, the government knew exactly where Mr. McLean was. He was put on leave, and yet that the 138 decision was sent to his former command, Commander Cosby. The government knew exactly where he was, and yet didn't send it to his home address, didn't send it to his command, and didn't send it to his lawyers. Do you have any evidence that anyone in the government said, let's keep him from finding out what's going on? You don't have it? There's no such evidence? We don't have any evidence, in fact, that they specifically tried to keep it from him. What we do have is two things. We have evidence that they didn't send it to his lawyers, and they were the ones that appointed him in counsel. They didn't send it to his new command, and yet they're the ones that sent him to a new command because he was on military leave. Why isn't all that short-circuited by simply adhering to the rule that the date of the discharge starts the clock, and everybody knows? The officer or member of the service knows, the later judges know, everybody knows six years starts the day of this discharge. Six years and one day later, too late to file in the Court of Federal Claims. Simple rule, simple to apply. No ambiguity, no worry about what mailing address was used, no arguments lawyers can later make. Because, for example, there's issues with Rule 11. There's issues that you cannot just file a complaint based upon a belief. In the evidence, because in a Tucker Act case, you're specifically, there's no discovery allowed in a Tucker Act case. Therefore, you can't just allege a belief of a claim. The government cited, I think, a Rule 11B, three of the rules that say that, oh, he could have just backed within the six years, alleged a belief, and then conducted discovery to prove his claim. He couldn't do that because in a Tucker Act claim, there's no discovery permitted, and therefore, under a Rule 11 type situation, you have to have the proof at hand, and yet he did not have the proof at hand. So if he had alleged a claim back between 1994 and 2000 when he didn't have the evidence, he could be thrown out of court and possibly even sanctioned for making allegations that he had no proof for because, eventually, he was going to have to, the court was going to rule on the record, and the record did not have the critical piece of evidence. So fairness dictates, basically, that he couldn't bring the claim in that six-year period of time because he didn't have the evidence he needed. The government had the evidence, and Mr. McLean, in fact, filed a motion to compel in 1994 to seek that evidence, and the government, for what, I'm not sure what reason was, the government opposed it. The government obviously knew by the filing of the motion that he didn't have the 138. Maybe before they thought that he had it and the mail was forwarded, I don't know, but they certainly knew by the time he filed his motion to compel, he didn't have the evidence, yet they opposed it, and the motion was denied. So despite his diligent efforts in 1994, you know, the same year that the discharge occurred, he attempted to get the evidence. He was foiled in his attempt to get the evidence. I mean, I don't know if the document was denied. He's not being faulted for not seeking evidence. He's being faulted for waiting more than six years. But he didn't have the claim within the six years because the evidence that he needed to support his claim passed in the discovery process. Of course he had the claim. Having the claim and having all the evidence are two different things. But in a Tucker Act case, in normal cases, you get to do discovery. We could have done a document request to get it. None of that is allowed in a Tucker Act case. So you basically have to have all your evidence when you bring your complaint. You can't just allege a belief and hope that something is going to mysteriously fall on your lap. You have to have the evidence. Otherwise, you know, again, it's possible he could be sanctioned or at least thrown out of court for not having the evidence. Well, as the WAGs say, anything is possible. I've never heard of Rule 11 sanctions being brought against a former member of the military service in one of these back pay Tucker Act cases on the grounds that the complaint was filed in bad faith with no support and so on. I understand that. I'm just using that as an extreme example. It probably wouldn't have been a Rule 11 violation, but his complaint surely would have been thrown out and therefore he didn't want to bring a complaint that he knew was going to be thrown out. He needed the evidence. The government had the evidence. They didn't send it to where he was. He filed a motion to compel. They opposed it. He didn't get the evidence there that he needed. That is the basis for an equitable tolling claim, a fairness doctrine, that there's extraordinary circumstances, specifically the Alvarez case, the Ninth Circuit found. If you've got extraordinary circumstances beyond your control despite your diligent efforts, that is where equitable tolling applies. In this case, I think that's exactly what we have. We have extraordinary circumstances. He took great efforts to get the evidence. Did he not know the facts? He may not have had all the documents, but he had knowledge of where in the wrongfulness lay. So why can't he file his lawsuit immediately based on his then-current discharge date knowledge of where in the wrongfulness lay? He filed a complaint for unlawful command influence, which is very different than a constitutional due process claim because an unlawful commission... No, no, no. I'm saying what is it he didn't know when he was discharged that would have been critical to filing in the court of claims. He knew what he knew when he was discharged. He could have filed the next day in the court of federal claims. He didn't have the evidence showing that his claims were... Having the evidence is different than knowing what the harmful, wrongful acts were. He knew the wrongful acts by the other people in the Navy. Correct, but under the Tucker Act, having a belief or knowing something is not the evidence that you need, and to be able to prevail in a Tucker Act claim, you need the evidence. It's different than a normal case where you can conduct discovery. That wasn't permitted here because it's decided on the administrative record, so he had to cross his T's and dot his I's before he could bring the complaint, and yet the evidence that he needed, that critical evidence that he needed, wasn't available until 2002, and he's being punished for the fact that despite his efforts to get the evidence, he didn't just sit idly by. He filed a motion to compel in 1994. That was objected to by the government. If the government wasn't attempting to keep it from him, then why didn't they just turn it over at that point in 1994, knowing that he didn't have it? They may have thought he had it before. They clearly knew by 1994, when he filed his motion to compel, he didn't have it. They should have turned it to him over then. So I'm not asserting any nefarious conduct with the government, but in essence, they concealed it because they didn't send it to the correct command, they didn't send it to his lawyer, and they opposed his motion to compel. I'm not sure what else he could have done. The government, as you know, says that the reason he didn't get it was because they failed to notify the authorities that his command had changed. Correct. They failed to notify. They knew where he was. No, but they say that all the reason they assumed, without having heard from him, that he was still in this command, and that they say all he had to do was say, please be advised that I am now a member of such and such a unit with giving a different address. But the point is, Your Honor, they're the ones that put him on leave. They're the ones that sent him to a new command. So the government certainly knew where he was. They knew he was no longer with Commander Cosgrove's command. He was with a new command because they sent him there. So the onus was upon them. They knew where he was. He didn't know the ruling was coming down, but they knew it, and they knew where he was. You said that about six times, and besides, time has expired. I think we have a very clear understanding of your arguments. Mr. Alexander? May I please the Court? Is it impossible to expand an administrative record in a military back pay slash Tucker Act case if it can be shown that some relevant document that ought to be part of the administrative record is, in fact, not then in the administrative record? Well, Your Honor, that's exactly what would have happened. I asked a yes or no question. Can I get a yes or no answer, please? Yes. It is possible to expand the record. Well, then Mr. Silverman says it's not possible because there's no discovery. Well, that's true. So how would I, if I'm a plaintiff in the Court of Federal Claims in such a case, get a document added to the administrative record that would then be reviewed by the claims court judge? The administrative record in a military pay case, in a challenge of a court martial, is not necessarily limited to the criminal proceeding. But you're not answering the question. If there's a document shown to be missing from the administrative file, regardless of whether it's a court martial or an administrative discharge or what it is, you say it's possible to get that document added. I just ask you, how would that be done? What I'm saying is the administrative record is filed by the government. We would compile the record and include that document. Why isn't the answer to Judge Michel's question that you file some sort of a motion in the Court of Federal Claims to include that document in the administrative record? Isn't that the procedure that you would follow if it appeared that this document was not in the administrative record? Yes. And what I'm saying is it would have been in there. The Article 138 decision would have been included in the administrative record that the Navy would have filed, would have prepared for the Department of Justice to file. It would have been in there already, so there wouldn't have been a problem. But as you say, Your Honor, if it were missing, there would be options for the plaintiff to make sure it was included. When you say would have been in the administrative record, I don't understand what you're saying. There is no administrative record. No administrative record has ever been filed in this case. It's important to understand that the documents that are in this joint appendix It doesn't administrative record exist. Administrative record exists. All of the documents are extant. If this case were remanded to the Court of Federal Claims for an adjudication on the merits, the Navy would forward to the Department of Justice. So your answer seems to be the administrative record exists. It may not all be in one file, so to speak. That's correct. Have you read it? I haven't. Well, how do you know what's in it? Well, what's going to be in it is what the Navy sends us to file with the Court. And what the Navy would include in it is going to be everything that you see before you plus any other relevant documents that the Navy has in their possession. How do we know that? How do we know what the full content of the administrative file has to be? Is there some statute that enumerates all the documents have to be in such a file? Or does the Navy get to choose what it puts in the file? I'm not aware of a statute or a regulation. Well, isn't the file then simply whatever is sent to the Court? That's right. It's assembled by the Navy. It contains A, B, C, D, whatever, and they send it to the Court. And the Court doesn't get to say, well, we don't think this is the full file. It just accepts and reviews what the Navy sends. Normally that would be the case. When is the administrative record compiled then? After the complaint is filed? Right. In this case, let's assume that this was filed timely, that Mr. McClain filed this complaint prior to the expiration of six years. The Navy would assemble all of the relevant documents. And by stating in his complaint that the outcome of the Article 138 complaint, in his complaint in the Court of Federal Claims, if he states that the outcome of my Article 138 complaint is relevant, the Navy is going to include the outcome of that complaint. Did he or didn't he? In his actual complaint, he did say that. All right. But the Navy has not sent the administrative record to Department of Justice to file it. But the basis of your confidence that if the Navy were to assemble the file, it would include the 138 materials, rests on the fact that the complaint cites 138 and cites the outcome of it. In other words, he, in his previous appeals, said it's relevant that I filed an Article 138 complaint, just that I filed it. He never said the result of that complaint is relevant. Because, as he claims, the NICS 2 decision had not come out yet, and this theory did not yet exist. Well, I assume if he files his complaint and the Navy then ships a box of records up to the court, he can look over the box of records, because it's a public record, and say the administrative record is not complete. You have failed to include A, B, and C. And then there may be an argument. The Navy may say A and B we'll give you, but C is not part of the record in this case. So we don't give you C. And then the judge decides what should be in the record. As I understand this big fat joint appendix, this is actually based on the documents that were before the Court of Federal Claims when it decided the case. Is that right? Yes. What you have here are... That's all I wanted to know. Are you all right? Yes. It's attachments to his complaint. When we moved to dismiss, we did not include any additional documentation. It's the attachments to his complaint. Because you said on its face the complaint is barred by the statute of limitations. That's right. And there's evidence in the documents attached to his complaint are helpful to understand what's happened in the case. Obviously, six years has passed. We all agree on that. This evidence is helpful to understand that equitable tolling does not apply. That's the relevance of this additional evidence. But on the face of it, clearly six years has passed. We all agree on that. Can I ask you a question? You may or may not know the answer to this. I think he says that what he had before the court-martial was a plea agreement. Is that actually what you have in the normal federal criminal cases? Is that something reduced to writing or is that just they discuss it and then he pleads? Your Honor, I can't answer that definitively. Because it's not unusual in the normal federal criminal proceedings if someone is going to plead guilty, he will preserve the right despite his guilty plea on appeal to raise certain issues, to raise the validity of the indictment. Do you know is there anything comparable to that in the court-martial system? The record seems to indicate that no, he did not reserve that right because the criminal appellate courts talk about the fact that he has waived the right to make those arguments. So it appears as though he did not attempt to preserve any issues for appeal. It does appear to do that. Other than, of course, jurisdiction. Right, that does appear to be the case. And today I gathered hearing his argument, he seems to be arguing that as a result of the participation of the commander, the court-martial didn't have any jurisdiction because the whole proceeding was unfair. That is his argument. And our contention is that there's nothing that stopped him from raising that argument, first of all, before the Court of Appeals for the Armed Forces, and second of all, before the Court of Federal Claims in a timely fashion. And so he's barred because he could have raised those arguments. And this goes to the discussion that the court was conducting earlier, that actually having a physical piece of paper saying, your Article 138 complaint has been granted, is of no relevance. The pleading rules at the Court of Federal Claims would allow him to say, upon information and belief, my Article 138 complaint was granted. There's nothing sanctionable about saying, upon information and belief. I lack the document, but I believe it to be true. He could have done that the day after his discharge and any time for the next six years. He also could have made that argument at the Court of Appeals for the Armed Forces. The next two decisions upon which his legal argument is based had been issued prior to the time that his time for appeal had run. He could have pled in an appeal to the Court of Appeals for the Armed Forces, something to the effect of, if, in fact, my Article 138 complaint has been granted, which I believe it has, then the argument exists that this was an illegal court martial, there was no jurisdiction, therefore the conviction should be overturned. Why does that matter to the time bar in the court below? Well, it matters to the extent that the trial court's jurisdiction to review court martial convictions is limited, and it's questionable whether the Court of Federal Claims could, even if there was a timely complaint, review a claim that was never raised in the military system. That's a questionable issue. But that doesn't have anything to do with the time bar. That has to do with what would happen in the court below if there weren't a time bar. That's right. That's right. But as far as the time bar goes, the only thing that is relevant is whether equitable tolling should apply. And, again, our argument is that clearly it should not, because there was nothing precluding him from raising this argument in a timely fashion. He simply didn't do it. Thank you. Thank you. Mr. Silverman, you used all your time, but we'll give you some time for rebuttal. Your Honor, I will be brief. Initially, I just want to respond to the question that Judge Friedman asked about whether Mr. McClain reserved his right to appeal. He actually did reserve his right to appeal, and— I didn't ask you whether he reserved the right to appeal. I asked you whether—the question I put was whether he reserved specific issues that he would raise on appeal despite his guilty plea, which is not— of course, he had the right to appeal, but the question is, did he preserve certain issues so that despite his guilty plea, he could argue those issues? And he certainly did, Your Honor, and evidence of the fact that he did so was the fact in 2003 when he brought his complaint before the Navy and Marine— No, no, no, no. When he pleaded guilty before the court— What I want to find out, and you may not know this, when he said, I plead guilty before the court-martial, did he say, and although I plead guilty, I reserve the right to argue on appeal the following points? It wasn't that explicit, no. He didn't explicitly use those words. He certainly reserved the right to appeal and specifically, at the time, had a claim for unlawful command influence. At the time, he did not have a claim for the constitutional, the fatal jurisdictional defect, the due process claim because, one, it was before the Nix 2 decision, the decision that came out that showed that if you're a referring commander that you can't have bias or prejudice, that wasn't previously available. What are you referring to? Is there some document that shows specific reservations stated by him at the time of his guilty plea? There's not a specific document, no. Well, then what are you basing your statement on? The question had to do with what's in the record of the guilty plea proceeding, whereby he reserved certain issues. And your answer is a catalog of issues you say he reserved, but if there's no record showing that he reserved those issues, we can't accept the idea they were reserved. Well, I said he did not reserve any specific issues. He didn't say, I reserve an issue to bring a due process claim, an issue to appeal a specific claim like that. But he did bring a claim later before the- Well, we know what he did later, but that wasn't the question. The question was whether when he pleaded guilty, he reserved the right to appeal certain issues notwithstanding admitting guilt. The argument the government raised was that it was a waiver. He didn't bring a claim within the 60 days, and therefore he waived. Let me just say, your answer apparently was, well, later on he did bring a suit raising these issues. And the court accepted it. And my question is, were those issues open to him in the light of his guilty plea? And normally when you plead guilty, in other words, when you plead guilty to certain things you can't litigate, he could not have gone up now after he pleaded guilty to these charges, he could not have gone up and told the Court of Military Appeals that there wasn't sufficient evidence to show he was guilty. That he couldn't do having pleaded guilty. And the question is whether the issue that he subsequently sought to litigate was open to him after his guilty plea. And all I was trying to find out was whether he preserves, explicitly preserved that issue when he pleaded guilty. And I gather the answer is he did not explicitly preserve it. He didn't explicitly do so, but the proof in the pudding that he didn't waive that right was when he brought his claim in 2003 before the Navy Marines Court of Criminal Appeals. The court issued an order to show cause. They reopened the case. They did not dismiss the case based upon a waiver argument. They proceeded on the case. They ultimately denied the complaint, and then it went to the Court of Appeals for the Armed Forces. But if there was an argument that he had waived and he didn't file in time and that the argument was lost, that certainly would have been addressed before the Navy Marines Court of Criminal Appeals. That didn't happen. They, in fact, issued an order to show cause and reopened the case. That's why... So what you're telling us, I take it, is that at least as far as the military court was concerned, it saw the issue as open to him. Correct. And the court agreed. Ultimately, it denied the complaint, and we continued on through the appeals for the military system through CAF and then back to the civilian courts. But it seems to me the questions, Your Honors, have been focusing on the issue of equitable tolling because if he couldn't bring the claim between 1994 and 2000 without the evidence, that's specifically squirrelly within the doctrine of equitable tolling that the Ninth Circuit and this circuit has found. And it just... The point is it's a fairness doctrine. It's pretty basic. It's a basic fairness doctrine that says that you cannot penalize somebody despite their extraordinary efforts and despite their due diligence. That's precisely what happened in this case. Well, what does the Ninth Circuit have to do with the review of a tolling ruling by the Court of Federal Claims? I'm not saying it's precedent. I'm just saying it's a standard for equitable tolling that we believe should apply here. It's basically the same standard. We've explicitly held in Martinez that we were not deciding whether equitable tolling applied to the six-year statute of limitations in the Court of Federal Claims. Correct. I know that issue came up in Martinez. This Court hasn't decided that issue yet. But even assuming that a plaintiff in the court below has eligibility to claim equitable tolling, Judge Williams ruled, as I recall from reading and re-reading and re-reading her opinion, as a matter of fact that she would not toll the statute here because there was insufficient factual basis for doing so. And that's the point that we believe the Court heard because, one, the Court ignored the fact that the diligent efforts that Mr. McLean took, including his motion to compel, and the fact that the Navy, his command, knew exactly where he was and yet forwarded it to the wrong man. Didn't forward it to his lawyer. They appointed him a lawyer. She knew all that. You pointed all that out. Correct. That was precisely what she rejected as being an inadequate basis for applying tolling to the circumstances of this case, even assuming that tolling was possible. We believe she didn't take into account all the facts. But more importantly, we believe she applied the wrong law because the law is that if there's one of the two factors, she focused on the first factor, the issue of concealment, or did they try to trick Mr. McLean? We're not arguing there was some trickery going on. We're arguing under the second prong the fact that if there's extraordinary circumstances beyond appellant's control, despite his diligent efforts, that would be circumstances in which tolling would apply. So the Court, Judge Williams focused on the trickery prong, and we're not alleging there was trickery by the government. They failed to provide it to him. But it's the extraordinary circumstances prong that we believe that equitable tolling applies here, and that's the prong that she didn't address and why we believe she erred. All right. Thank you. The case is submitted.